## Richmond

## CARSON V. J. L. MOTT IRON WORKS.

### January 12, 1915.

### Absent, Keith, P.

1. GUARANTY—*Execution—Assent of Guarantor—Case at Bar.*— The circumstances surrounding the giving of the guaranty upon which the case at bar is founded and the subsequent conduct of the defendant were such as to fully justify the court in believing that the contract of guaranty was made with his concurrence and assent.

2. PRINCIPAL AND SURETY—*Giving Time to Principal—Guaranty.*— If the time of payment of a debt, for which a principal and surety are bound, is extended for a definite period, without the consent of the surety, by a binding agreement between the creditor and the principal, as a general rule, the surety is discharged. The same rule is equally applicable to the guarantor of the debt of another.

3. PLEADING—*Case Heard by Court—Weight to Judgment.*—When an action at law is heard by the court, without the intervention of a jury, its finding upon the facts must be given the same weight as if it were the verdict of a jury. It will not be reversed as contrary to the evidence unless it is plainly so, or is without evidence to support it.

4. EVIDENCE—*Failure of Party to Testify—Inference.*—When evidence has been introduced by one litigant tending strongly to prove the truth of a matter in dispute, and the other party can by his own evidence throw light upon such matter necessary to his defense and peculiarly within his knowledge, if the fact exists as he claims it, and he fails to go on the witness stand, such failure may be considered by the court or jury trying the case, along with other facts proved, since his failure to testify raises a strong suspicion that his own testimony, if given, would operate to his prejudice.

5. PRINCIPAL AND SURETY—*Time Given to Principal—Consent of Surety—How Shown.*—It is not necessary that the consent of the surety to the extension of time to his principal should be proved by direct testimony. That fact, like most others, may be proved circumstantially as well as directly.

6. APPEAL AND ERROR—*Errors Not Assigned in Petition—Reply Brief.*—Questions not raised in a petition for writ of error, as a general rule, come too late in a reply brief.

7. NEW TRIAL—*After-Discovered Evidence—Diligence to Discover.* A verdict will not be set aside for after-discovered evidence which the exercise of ordinary diligence would have disclosed before the trial.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of assumpsit. Judgment for the plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Wm. P. DeSaussure* and *J. Kent Rawley,* for the plaintiff in error.

*C. M. Chichester,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

J. L. Mott Iron Works, a corporation, instituted its action of assumpsit against J. Preston Carson and J. Graham Davidson, partners trading under the firm name of Graham Davidson and Company, as guarantors of debts aggregating $1,259.36 due to the plaintiff company for goods furnished the Southern Plumbing and Electric Company, also incorporated. Process was not served upon Mr. Davidson, but the action proceeded against Mr. Carson, who filed a plea of non assumpsit. Upon the trial of the cause all matters of law and fact being submitted to the court, there was a judgment for the plaintiff company for the amount sued for. To that judgment this writ of error was awarded upon the petition of the defendant.

As stated by the plaintiff in error in his written argument, the questions which the record presents for the decision of this court are:

1st.  Is the guaranty sued on the contract of the petitioner?

2nd:  If so, "is the petitioner discharged as guarantor under the contract by the acceptance by the creditor of a note of the principal debtor endorsed by a third party, given after the guaranteed debt was past due, which suspended the creditor's right of action on the guaranteed debt for several months?"

As to the first question, while there is no evidence that the defendant, Carson, expressly authorized the contract of guaranty in the name of the firm which was made by letters written by the other member of the firm, the circumstances surrounding the transaction and the subsequent conduct of the defendant were such as to fully justify the court in believing that the contract of guaranty was made with his concurrence or assent.  He was interested as a stockholder in the Southern Plumbing and Electric Company, the principal debtor; he was the "moneyed man" of the corporation as well as of the partnership; both concerns occupied the same office, though each kept separate books; the defendant was in the office almost every day, and sometimes oftener; his partner testified that he generally consulted him in regard to financial matters; and the defendant, after the guaranty had been made, in a business conversation with the secretary of the plaintiff company, after stating that he was very much interested in the Southern Plumbing and Electric Company, said that the bills that Graham Davidson & Co., had guaranteed would be paid; that he thought the payment being guaranteed by Graham Davidson & Co. made the account an excellent one  .  .  ."

The finding of the trial court on this question is not only sustained by the evidence, but it is difficult to see how, upon the record before us, any other conclusion could have been reached.

The next question to be considered is, has the defendant been discharged from his liability as such guarantor?

It appears that in the summer of 1909 and after the partnership of Graham Davidson & Co. had made the said guaranty, it was dissolved and a corporation created styled Graham Davidson and Company, Incorporated, in which both members of the partnership were stockholders, and of which Davidson was president. Soon after that company's incorporation it offered to guarantee all accounts that the Southern Plumbing and Electric Company might thereafter make with the plaintiff company. That offer of guaranty was accepted. On the 3rd of January following, after the indebtedness of $1,259.66 guaranteed by the partnership of Graham Davidson & Co. had become due, the plaintiff company took a note from the principal debtor for $1,-745.44, which included the account, the payment of which had been guaranteed by the said partnership, payable within two months, and endorsed by "Graham Davidson & Co., Inc." Upon the maturity of that note it was reduced by payment to $1,500 and a renewal note made, also due in two months and endorsed by the same corporation. When that note became due, or shortly afterwards, both the maker and the endorser were insolvent.

It is too well settled to need the citation of authorities that the general rule is that, when the contract of the surety is for the debt of the principal, if the time of payment is extended for a definite period without the consent of the surety by a binding agreement between the creditor and the principal, the surety is discharged. The same rule is equally applicable to the guarantor of the debt of another. 1 Brandt on Suretyship and Guaranty (3rd Ed.), section 377.

There was some suggestion that the original and renewal notes were accepted by the plaintiff company as collateral, but the evidence fails to show this. The record shows (as

we have seen) that the defendants' firm were the guarantors of a debt of $1,259.66 due the plaintiff company; that this sum was included in the note for $1,745.44; and that the note and the renewal thereof were binding agreements between the creditor and the principal debtor, and that they each extended the time within which to pay. This extension of time discharged the defendant from liability as guarantor unless, as the trial court found, he had consented to such extension.

Its finding upon the facts must be given the same weight as if it were the verdict of a jury. *Martin* v. *Richmond, etc.,* 101 Va. 406, 44 S. E. 695; *Hoster, etc., Co.* v. *Stagg Hotel Corp.,* 111 Va. 223, 68 S. E. 50. The judgment of the court cannot, therefore, be reversed as contrary to the evidence unless it is plainly so, or is without evidence to support it.

Mr. Mitchell, the president of the Southern Plumbing and Electric Co., and the officer who made the notes extending the time for the payment of the guaranteed debt, testified that the defendant "was the only moneyed man connected with the Southern Plumbing and Electric Co.; that he was active in looking after its financial matters, and that all of them looked to him . . .; that the defendant was familiar with the financial situation of the Southern Plumbing and Electric Co., was usually in the office of the company every day; and that he was satisfied he must have known of and consented to the giving of all the notes by the Southern Plumbing and Electric Co., as it was his custom to consult Mr. Carson about all such matters in connection with said company." He further testified that he could not recollect any of the details as to the giving or signing of the original note, nor could he say whether or not the defendant was present at that time, or whether he had any specific knowledge about this note, as he did not recall the circumstances, nor did he recollect

anything further about the renewal note than that he had signed it as president of the maker company.

Mr. Taylor, the .secretary of the Graham Davidson & Co., corporation, testified that he was connected with the Southern Plumbing and Electric Co., as a stockholder and officer, from its inception and had held every office in the corporation except that of president; that he was an officer in Graham Davidson & Co., Inc., and had been from its creation; that the defendant was quite actively interested in financial matters concerning the Southern Plumbing & Electric Co., and was at the office of the company very often, probably every day; sometimes twice a day; that he had no recollection of the original note given in January, and only recollected the fact that the renewal note had been brought to him for endorsement; that he had no recollection whether or not the defendant was in the office on that day. He further testified that "in original financial transactions his habit was always to consult Mr. Carson; that in regard to renewal notes he might have signed them without consulting Mr. Carson. But he would not have entered into an original transaction without Mr. Carson's O. K."

Mr. Davidson, of the partnership of Graham Davidson & Co., and afterwards president of the corporation of that name, testified that he generally consulted with the defendant in regard financial matters; that in the fall of 1909 he with Mr. Rourke, a representative of the plaintiff company, called on the defendant at his law office, and that Mr. Rourke had stated that the account of the Southern Plumbing and Electric Co. was not in a satisfactory condition, and that he, Rourke, had been instructed to get either the money for that account or a note with a satisfactory endorser; that Mr. Rourke had requested that such note, if given, be endorsed either by the defendant personally or the firm of Graham Davidson & Co. The witness further

testified that he and Mr. Rourke left the defendant's office without getting any note or any agreement from the defendant in connection therewith, and that "the matter was left in suspense." Mr. Rourke's testimony as to this interview with the defendant is substantially the same as that of Mr. Davidson.

Mr. Goebel, the secretary of the plaintiff company, testified that in November, 1909, the defendant had come into his office to see him (the witness) particularly about the Southern Plumbing and Electric Co.; that in their conversation at that time the defendant stated that he was much interested in that company; "that the bills that Graham Davidson & Co. had guaranteed would be paid; that he thought the payment being guaranteed by Graham Davidson & Co. made the account an excellent one, and that he was interested in the success of that company because he was an endorser at the bank for it to the extent of $25,000 and in consequence he wished the company to prosper and meet all its obligations."

All these witnesses were introduced by the plaintiff company.

The defendant, as stated in the bill of exceptions certifying the evidence, declined to introduce any witness and did not testify himself, although he was present in court during the trial. Upon the testimony of the plaintiff's witnesses and the presumption which arose from the failure of the defendant to testify under the facts and circumstances disclosed by the record, the court found that the defendant had consented to the extension of time given by the plaintiff to the principal debtor.

The failure of the defendant to go upon the stand himself to testify as to matters which were peculiarly within his knowledge after the plaintiff had introduced evidence which tended strongly to prove, if indeed it was not such as would cause a jury or court naturally and reasonably to

believe, that the defendant must have known of and consented to the extension of time to the principal debtor, a corporation in which he was deeply interested and largely controlled, was a fact bearing upon the issue involved which no court or jury could fail to regard, for it was an existing, material and probative fact. When evidence has been introduced by one litigant tending strongly, as in this case, to prove the truth of a matter in dispute, and the other party can by his own evidence throw light upon such matter in dispute necessary to his defense and peculiarly within his knowledge, if the fact exists as he claims it, and he fails to go upon the witness stand, such failure may be considered by the court or jury trying the case along with other facts proved, since his failure to testify raises a strong suspicion that his own testimony, if given, would operate to his prejudice. See *Kirby* v. *Tallmadge*, 160 U. S. at page 383; *Aragon Coffee Co.* v. *Rogers*, 105 Va. 59-61, 52 S. E. 843, 8 Ann. Cas. 623; *Copperthite* v. *Loudoun County, etc., Bank*, 111 Va. 70, 75, 68 S. E. 392; 1 Wigmore on Ev., sections 289, 290, sub-section 5.

It was not necessary that the consent of the defendant to the extension of time should be proved by direct evidence. That fact, like most others, may be proved circumstantially as well as directly.

It seems to us that upon the whole case the trial court did not err in reaching the conclusion that the defendant had consented to the extension of the time for the payment of the debt he was bound for as guarantor, and was, therefore, not discharged from liability.

In the reply brief the further contention is made by the defendant that even though the court was right in rendering judgment against him, it erred in not crediting certain sums on the debt guaranteed by the defendant instead of permitting them to remain as credits upon the other por-

tion of the plaintiff's claim, and upon which that company had, it seems, credited them.

No such question is raised in the petition for the writ of error, and as a general rule it is too late on a writ of error to assign an error for the first time in a reply brief. But the contention, if considered, does not seem to be sustained by the record. The accounts guaranteed amounted to the sum of $1,259.66, bearing interest, as the evidence shows, from October 13, 1909. This sum was reduced by the court and judgment given for $1,217.62. It appears that a part of this reduction was for the sum of $20.00 freight allowance. The other portion was doubtless on account of the item of dividend collected by the plaintiff from the principal debtor in the administration of its assets. It does not satisfactorily appear that the defendant was entitled to any other credits on account of payments made by the debtor. The judgment only bears interest from November 1, 1909, when the positive evidence is that interest ran upon the account from October 13 of that year.

After the court had rendered judgment, a motion was made for a new trial upon the ground of after-discovered evidence. Affidavits for and against granting the motion were filed. Without discussing those affidavits in detail, it is sufficient to say that they show that the defendant's knowledge of the relation of Mr. Rucker (the after-discovered witness) to the principal debtor and Graham Davidson and Co., Inc., and their affairs was such that by the exercise of ordinary diligence in searching for evidence for his defense the defendant would and could have ascertained what Mr. Rucker knew and had him present at the trial as a witness.

Upon the whole case the court is of opinion that there is no error in the judgment, and that it should be affirmed.

*Affirmed.*