# CRIMINAL CASES

## Richmond.

BURN V. GRAY AND WILLIAM GRAY v. COMMONWEALTH.

March 22, 1928.

Absent, Burks, J.

1. APPEAL AND ERROR—*Assignments of Error in Relation to the Action of the Court in Giving and Refusing Instructions—Ground of Objection to Instructions not Stated to the Trial Court—Rule 22 of the Supreme Court of Appeals.*—On writ of error to a judgment convicting defendants of murder, the action of the court in giving and refusing instructions was assigned as error. It did not appear from the record that the defendants stated to the trial court the grounds of their objections to the rulings of the court in these matters, as required by Rule 22 of the Supreme Court of Appeals.

   *Held:* That the Supreme Court of Appeals could not consider these assignments of error.

2. EVIDENCE—*Res Gestae—Dying Declarations—Narration of Deceased After he had been Removed to the Hospital—Case at Bar.*—In the instant case, a prosecution for the murder of a policeman, the court's refusal to permit a doctor to repeat to the jury a statement made by deceased to him after his arrival at the hospital on the morning he was shot, that deceased was shot, during a scuffle, with his own gun, which he at the time had hold of together with the man he was tussling with, one of the defendants, was assigned as error.

   *Held:* That this statement to the doctor was not admissible as a part of the *res gestae*, and it was conceded that it was not admissible as a dying declaration.

3. RES GESTAE—*Narration of Events which had Already Occurred—Case at Bar.*—In the instant case, a prosecution for murder, a statement of deceased's made at the hospital where he was taken after the shooting, that he was shot with his own gun, in a tussle with one of the defendants, who, with the deceased, had hold of the gun, was a narration of events which had already occurred, and not "events speaking for themselves through the words and acts of participants," and therefore was not a part of the *res gestae*.

4. RES GESTAE—*Narration of Past Events.*—The rule as to the admissibility
of *res gestae* does not p'ermit the introduction, under the guise of *res
gestae,* of a narration of past events made after the events are closed,
by either the party injured or by  the by-standers.

5. HOMICIDE—*Hearsay Evidence—Case at Bar.*—In a prosecution for mur-
der, a statement made to a doctor by deceased, after he had been
removed to a hospital, that deceased was shot with his own gun,
is plainly hearsay, and its admission in evidence would violate the
rule against the admission of hearsay evidence.

6. HOMICIDE—*Evidence—Refusal to Admit Evidence in Conflict with the
Physical Facts—Harmless Error.*—In the instant case, a prosecution
for homicide, the court refused to admit the testimony of a doctor
to the effect that after the deceased had been removed to a hospital, .
on the day of the shooting, that he told the doctor that he had been
shot with his own gun. It appeared conclusively from the physical
facts, and was admitted by the defendants, that the shot which
killed deceased was not fired from his own gun. Deceased evidently
thought that the shot which struck him came from his own gun, but
it was conclusively shown that it did not.

*Held:*  That defendants were not prejudiced by the court's refusal to
allow them to introduce this evidence, which could not overcome the
physical facts.

7. HOMICIDE—*Evidence Sufficient to Sustain Verdict Against Defendant for
Murder in the First Degree—Case at Bar.*—The instant case was a
prosecution of defendants for the murder of a policeman. Defend-
ants were brothers. The evidence showed that the defendant B. G.
ran up behind the policeman while he was tussling with his brother
over the possession of the policeman's pistol, and struck the police-
man on the side of the head with the butt of his pistol, and then
stepped back and fired three shots at the policeman, one of which
proved to be fatal. B. G. shot the policeman while he was endeavor-
ing to arrest his brother for carrying a concealed weapon and to
protect himself against an assault on him by his brother. The
policeman did not lay his hands upon B. G., or harm him in any way.
Both of the defendants attempted to make their escape after the
shooting.

*Held:*  That a verdict of guilty of murder in the first degree against
B. G. was amply supported by the evidence and not contrary to law.

8. HOMICIDE—*Evidence Insufficient to Sustain Verdict of Murder in the
Second Degree Against Defendant—Case at Bar.*—In the instant case
defendant, W. G., was convicted of aiding and abetting his brother,
B. G., in the murder of a policeman. While defendant, W. G., was
struggling with the policeman who was attempting to arrest him,
B. G. ran up behind the policeman, struck him over the head with

the butt of his pistol and stepped back and fired three shots at the policeman, one of which proved to be fatal. The evidence failed to disclose any word or act spoken or committed by W. G. with intent to aid or abet B. G. in shooting the officer. To support the verdict, the Commonwealth relied upon the fact that W. G., after his pistol had fallen from the hands of the officer to the sidewalk, kicked it in the direction of B. G. B. G. was not then in sight of W. G., and W. G. knew that B. G. had his own pistol in his pocket.

*Held:* That the evidence was insufficient to support a verdict of guilty of murder in the second degree against W. G.

9. CRIMINAL LAW—*Aiders and Abettors—Mere Presence.*—A man's mere presence when a crime is committed will not make him an aider and abettor in the commission of the crime. To make him an aider or abettor, he must be shown to have "procured, encouraged, countenanced, or approved," the commission of the crime.

Error to judgments of the Hustings Court of the city of Petersburg.

*Affirmed as to Burn V. Gray.*
*Reversed as to William Gray.*

The opinion states the case.

*J. Raymond Gordon* (of W. Va.), for the plaintiffs in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

Burn V. Gray and William Gray were jointly indicted for the murder of J. Peyton Stewart, a policeman of the city of Petersburg, Virginia. The indictment contains two counts, the first charging that Burn V. Gray murdered Stewart, and that William Gray was present aiding and abetting in the murder; and the

second charging that William Gray murdered Stewart and that Burn V. Gray was present aiding and abetting in the murder. The second count was abandoned at the trial.

Upon the trial, Burn V. Gray was convicted of murder in the first degree, and his punishment fixed at death; while William Gray was convicted of murder in the second degree and given fifteen years in the penitentiary. To the judgment sentencing them in accordance with verdicts of the jury, this writ of error was awarded.

The defendants' petition assigns as error the court's action—(1) In refusing to give instruction No. 1 for the defendants; (2) in refusing to permit defendants to introduce evidence of Dr. George H. Reese to prove certain statements made by officer Stewart at the hospital soon after he was shot; (3) in giving instruction No. 13, offered by the Commonwealth; (4) in giving instruction No. 22, upon the motion of the Commonwealth; and (5) in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

[1] Assignments of error 1, 3 and 4 relate to the action of the court in giving and refusing instructions. It does not appear from the record that the defendants stated to the trial court the ground of their objection to the rulings of the court in these matters, as required by Rule 22 of this court. In such a situation, we cannot consider these assignments of error. *Levine* v. *Levine,* 144 Va. 330, 132 S. E. 320; *Keeney* v. *Commonwealth,* 147 Va. 678, 137 S. E. 478; *Kelly* v. *Schneller,* 148 Va. 573, 139 S. E. 275; *Kercher's Admr.* v. *R. F. & P. R. Co., ante* page 108, 142 S. E. 393, decided to-day.

Assignment of error No. 2 relates to the court's refusal to permit Dr. George H. Reese to repeat to the jury the following statement made to him by officer

Stewart between 8 and 8:45 o'clock, about fifteen minutes after he arrived at the hospital, on the morning he was shot: "He (Stewart) said in substance, that he was shot during the scuffle, with his own gun, which he at that time still had hold of together with the man he was tussling with, and added something of the nature of its being a very foolish thing to have let it occur. In other words, that he could have used the gun and prevented it, but that he was dallying with the boy and let it happen."

It appears from the evidence that officer Stewart told the defendant, William Gray, who was suspected of being a vagrant, to show him something that would prove his identity; that Gray did not produce such proof and Stewart, without objection from William Gray, ran his hands over him and discovered a pistol concealed in one of his pockets, and at once drew his pistol on Gray and told him to hold his hands up. He then commanded a by-stander, Henry Lewis, to take the pistol from Gray and give it to him, which Lewis did by placing the pistol in the same hand in which Stewart was holding his own pistol. A scuffle then ensued in which Gray was endeavoring to take his pistol from Stewart. He grabbed Stewart by the wrist and Gray's gun fell on the sidewalk, and was kicked by Gray towards the northeast corner of the market, which was near by. In the scuffle over the officer's gun, while both of them had their hands above their shoulders, the gun went off. Immediately Burn V. Gray came from around the corner of the market in a stooping position, and ran up and struck Stewart on the head with the end of his gun and then stepped back and opened fire on him. His gun snapped twice and fired three times. As the second shot was fired, officer Stewart "grabbed his stomach and hollered,

'Oh Lordy.' '' It is admitted that the gun which was taken from the person of William Gray in the scuffle at the market is the one from which the bullet, taken from Stewart's body, was fired. It was a 32:20 police special, and Burn V. Gray also had in his possession a pistol of the same make and caliber. It is also conceded that officer Stewart's gun was a 38 Smith and Wesson, and that the bullet taken from Stewart's body could not have been fired from a No. 38 pistol.

It will be observed that Stewart did not say that he shot himself, but that he was shot, during the scuffle, with his own gun, which he and William Gray had hold of. Stewart's statement negatives the contention that he fired the fatal shot, when he says it was a foolish thing to have let it occur when he could have used the gun and prevented it.

[2, 3] It is conceded that this evidence was not admissible as a dying declaration. In our view, it was not admissible as a part of the *res gestae*. It was a narration of the events which had already occurred, and not "events speaking for themselves through the words and acts of participants;" and therefore not a part of the *res gestae*.

[4] In 1 Wharton's Criminal Evidence (3d ed.), section 264, page 606, we find this: "The rule before us, however, does not permit the introduction, under the guise of *res gestae*, of a narration of past events made after the events are closed, by either the party injured or by the by-standers."

[5, 6] The statement is plainly hearsay, and its admission would have violated the rule against the admission of hearsay evidence. Besides, it appearing conclusively from the physical facts, and being admitted by the defendants, that the shot which killed Stewart was not fired from his gun, defendants were

not prejudiced by the court's refusal to allow them to introduce this evidence, which could not overcome the physical facts. Stewart evidently thought that the shot which struck him came from his own gun, but it is conclusively shown that it did not.

This assignment is without merit.

[7, 8] The fifth and last assignment of error involves the court's action in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

Considering the evidence and all proper inferences to be drawn therefrom, from the standpoint of the Commonwealth, the jury were warranted in finding the foregoing and the following facts:

Burn V. Gray and William Gray are brothers, and were from West Virginia. They were beating their way over the country, in search of work, and had been to several cities in West Virginia and in Virginia, including Roanoke and Norfolk, Virginia. They beat their way on a freight train from Norfolk to a point about eight miles from Petersburg, where they spent the night and walked into Petersburg early in the morning of May 24, 1927, as they said, on their way to Pennsylvania, looking for work.

J. Peyton Stewart, police officer of the city of Petersburg, first saw them on the sidewalk at the "New Market," on Harrison street, soon after they arrived. He saw they were strangers and apparently thought they were without visible means of support, and asked them: "Haven't you got a job yet?" They replied that they had just arrived. He asked where they were from and what were their names. They told him their names and that they came to Petersburg from Norfolk. He asked Burn V. Gray for an identification card, and he handed him a note book from his pocket which the officer examined and handed back to him.

Satisfied with the statement of Burn V., he turned to William Gray and asked him if he had a letter or anything to identify himself with, and he said he had nothing. Stewart, without any objection on William's part, ran his hand into the latter's pocket for letters, and seeing the bib of his overalls was bulged, he asked what that was, and William said it was a cap and started to pull it out, when Stewart said: "It is a pistol. I will take care of that."

Three witnesses testified that they saw Burn V. Gray shoot Stewart. One or more of them saw him run up behind officer Stewart while he was tussling with William Gray over the possession of the pistol, and strike Stewart on the side of the head with the butt of his pistol, and then step back and fire three shots at Stewart, one of which proved to be the fatal shot. Both of the defendants left the scene immediately after the shooting and attempted to make their escape. Burn V. Gray hid on the lot of a lady on Brown street. The pistol from which the fatal shot was fired was found upon the same lot. The pistol had in it three empty shells, two cartridges that had been snapped, and one loaded shell.

Officer Stewart did not lay his hands upon Burn V. Gray, or harm him in any way. Burn V. Gray shot Stewart while he was endeavoring to arrest William for carrying a concealed weapon and to protect himself from William's assault.

The verdict against Burn V. Gray is amply supported by the evidence and is not contrary to the law.

As it seems to us, the verdict against William Gray is without evidence to support it. He was convicted of aiding and abetting Burn V. Gray in the murder of officer Stewart. The evidence fails to disclose any word or act spoken or committed by William Gray

with intent to aid or abet Burn V. Gray in shooting officer Stewart.   To sustain the verdict against William Gray, the Commonwealth relies solely upon the fact that William Gray, after his pistol had fallen from the hands of Stewart to the sidewalk, kicked it in the direction of the northeast corner of the market, in which direction Burn V. Gray had gone.   Burn V. Gray was not then in sight of William, and William evidently knew that Burn V. had his own police special in his pocket and did not need another pistol.   It seems just as certain that William kicked the gun to get it out of the reach of the officer with whom he was tussling as that he kicked it with the intent that Burn V. Gray should get it and shoot the officer.

[9] A man's mere presence when a crime is committed will not make him an aider and abetter in the commission of the crime.   To make him an aider or abetter, he must be shown to have "procured, encouraged, countenanced, or approved," the commission of the crime.   There is no evidence that William Gray did any of these things.

The judgment against Burn V. Gray will be affirmed. The judgment and verdict against William Gray will be set aside and annulled, and the case remanded for a new trial if the Commonwealth shall be so advised.

*Affirmed as to Burn V. Gray.*
*Reversed as to William Gray.*