# Staunton.

## E. D. PAULEY v. COMMONWEALTH.

September 20, 1928.

The opinion states the case.

*J. R. Peery* and *R. O. Crockett*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General*, for the Commonwealth.

HOLT, J., delivered the opinion of the court.

At the November term, 1926, of the Circuit Court of Tazewell county, E. D. Pauley was indicted for murder of one T. J. Keesee. This homicide occurred on October 3, 1926. In due course the accused was brought to trial, and on November 19, 1926, the jury returned this verdict into court:

"We, the jury, find the defendant guilty of murder in the 2nd degree and fix his punishment at five years in State penitentiary."

The trial court was asked to set it aside as contrary to the law and the evidence. It was also claimed that evidence newly discovered and material had come to the knowledge of the defendant and his counsel after

the verdict, and that because of it too a new trial should be ordered. All of these motions were overruled, and sentence in confirmation of the jury's finding pronounced. Exceptions were duly taken, and the matter is now before us on a writ of error.

We have a jury's verdict confirmed by the trial court. Looking at this case from this angle there is ample evidence to establish the following facts:

The defendant and his wife, casually, came upon T. J. Keesee and wife, and his step-son, Mont Miller, and wife, who were in the road trying to start the Miller automobile. This was on a Sunday morning. When the Pauleys came up to the car where Miller and his wife and Keesee and his wife were, they spoke to the Millers but not to the Keesees, and asked Miller about the purchase of some liquor. Miller and wife and Pauley and wife went to the Miller house but the supply of liquor had been exhausted and they got none. The Keesees did not go but stayed where they were in the road. When the Pauleys returned, the accused went to the car and walked around it in such manner as to attract Keesee's notice.

"Mr. Keesee said: Take Mr. Pauley away from here. Mr. Pauley turned and said: 'Who in the hell is bothering you, you God damn old son-of-a-bitch;' said 'God damn you, I will kill you;' said 'I am going to kill you.'"

Keesee ran towards the Miller house and Pauley shot at him three times. Miller upbraided Pauley for this shooting. Mrs. Keesee threatened to go after an officer. Pauley said; "God damn you," slapped her in the face and shoved her back in the bushes. Miller then struck him and knocked or threw him to the ground. While astride of him Mrs. Pauley, with what is variously described as a club, a rake, and "something from a child's wagon," struck at Miller several times,

and in the excitement hit her husband, who, as we have seen, was on his back on the ground under Miller.

The Pauleys say that Miller beat the accused in the face with an ax, and that Keesee, who in the meantime returned to the place of combat, then got possession of it and continued the assault. Whatever may be the truth as to this, it does appear that Mr. Pauley threw Mrs. Keesee into the bushes, grabbed Miller by the seat of his trousers and pulled him off of Pauley, who then got up and drew his pistol. Keesee ran towards the car, Pauley followed and shot at him, Keesee dodged behind it, when Pauley again shot at him and killed him instantly.

It is not easy to say how badly Pauley was injured in the fight with Miller. He was badly hurt. A tooth was knocked out, his nose was broken, and the right frontal sinus fractured. A doctor who testified for him said that it was possible that these injuries might have been inflicted in the manner testified to by the Commonwealth's witnesses, but it is difficult to understand just how it was done, and it is still more difficult to understand how Pauley could have survived at all if Miller had beat him in the face with an ax. This much is reasonably certain, he could not, after such punishment, have gotton up, followed and shot Keesee and then gone home without assistance.

So much for what occurred upon the occasion of the killing. There had been bad blood between these men for some time. They were the owners of small adjoining tracts of mountain land, above Boissevain, Virginia. Keesee had built a division fence and Pauley had refused to pay for his part of it. There was a warrant and trial before a magistrate in the summer of 1925. Judgement went against the accused. He was angered thereby, and knocked Keesee down. For this he was fined

$20.00 and offered to pay $20.00 more for the privilege of a second assault. There was evidence of threats to do extreme violence to the deceased, and there is also evidence of threats made by the deceased against the accused.

■ The assignments of error are addressed to the action of the trial court relative to instructions, and to a motion for a new trial because of after-discovered evidence. These instructions are thirty-two in number. One to seventeen, inclusive, and thirty-two were given at the request of the Commonwealth, while eighteen to thirty-one were granted at the instance of the defendant. Instructions A, B, C, D and E were tendered on behalf of the defendant and refused. None of these assignments can be considered because of Rule 22 of this court. The exceptions are in general terms, and no grounds therefor appear in the record.

■ In *Gray* v. *Commonwealth*, 150 Va. 571, 142 S. E. 397, decided by this court March 22, 1928, it was said: "Assignments of error 1, 3 and 4 relate to the action of the court in giving and refusing instructions. It does not appear from the record that defendants stated to the trial court the ground of their objection to the rulings of the court in these matters, as required by Rule 22 of this court. In such a situation, we cannot consider the assignments of error. *Levine* v. *Levine*, 144 Va. 330, 132 S. E. 320; *Keeney* v. *Commonwealth*, 147 Va. 678, 137 S. E. 478; *Kelly* v. *Schneller*, 148 Va. 573, 139 S. E. 275; *Kercher's Adm'r* v. *R. F. & P. R. R. Co.*, 150 Va. 108, 142 S. E. 393, decided today."

■ Had this rule never been written the results in this case would be the same. On behalf of the accused it was urged that he acted in self-defense, and on this the jury was instructed with an elaboration of details that covered every phase of that defense. If we should crit-

icise at all, it would be because too much and not too little was said.

Rejected instructions A, C and D deal with this same subject, already amply covered.

■ This is instruction B: "The court instructs the jury that in considering whether or not the defendant acted in self-defense or apparent self-defense, you must consider that the defendant had only one arm; that at the time he fired his nose had been crushed, his skull had been broken, one of this teeth knocked out, and that there were three or more cuts in his face from which blood was flowing and that the deceased and Mont Miller were in possession of the use of their limbs."

Such an instruction was given in *Richardson* v. *Commonwealth*, 128 Va. 694, 104 S. E. 788, but was given on behalf of the accused, and, therefore, given without objections of record. It calls attention to particular matters in evidence, which were more properly the subjects of arguments than of instructions. It is further objectionable in that it exaggerates the injuries Pauley had received. His skull had not been broken, the right sinus was fractured, but that from the viewpoint of an ordinary man is no more a part of the skull than is the nose. There was no reversible error in the rejection of this instruction.

■ ■ This is instruction E: "The court instructs the jury that if they believe from the evidence that the defendant procured the pistol for the purpose of defending himself and not for the purpose of making an assault upon the deceased, then there can be no presumption of malice against the defendant from the fact of him so arming himself with the pistol; that the fact that he so armed himself did not deprive him of the right of self-defense, and that if you should further believe from the

evidence that the defendant reasonably believed that he was in bodily danger from the deceased, such belief being based upon an overt act or demonstration of said deceased, then you must find the defendent not guilty."

The substance of this instruction is that it tells the jury that there is no presumption of malice where a defendant armed himself for the purpose of defense. Such an instruction in this case would be hurtful and misleading.

"The test of criminal intent in the use of a deadly weapon is to be found not in the manner in which, or the purpose for which, the previous possession of the weapon was acquired, but in its deliberate use for a deadly purpose." *Mealy* v. *Commonwealth*, 135 Va. 585, 115 S. E. 528; *McMurry* v. *Commonwealth*, 143 Va. 490, 129 S. E. 252.

It was the use of this pistol which justified the judgment of the trial court, and we need not concern ourselves with Pauley's purpose when he procured it.

On this branch of this case, the court is of the opinion that alleged errors in instructions cannot be considered because of the salutary and mandatory provisions of Rule 22, and if we were to consider them in detail, it would appear that there was no error. The jury had been fully and fairly instructed.

We turn now to the motion for a new trial because of after-discovered evidence. This is a subject which has been so frequently considered by this court as to make its detailed examination wholly unnecessary.

Judge McLemore, in the recent case of *Harris* v. *Wall*, 144 Va. 774, said: "Motion to set aside the verdicts of juries and judgments entered thereon, based upon after-discovered evidence, are not as a rule looked upon with favor by the courts.

"The policy of the law is to give to every litigant one, and only one, opportunity of presenting his case to the jury or before the court, and when this has been had, the results of the trial will not usually be disturbed unless the party moving can place himself within the rules as frequently announced by the Supreme Court. They are substantially as follows:

"1.  The evidence must have been discovered since the trial.

"2.  It must be such as could not, by the exercise of diligence, have been discovered before the trial terminated.

"3.  It must be material, and such as ought to produce a different result on the next trial.

"4.  It must not be merely cumulative, corroborative or collateral.  Burks' Pl. & Prac. (2d ed.) 556; *Barsa* v. *Kator*, 121 Va. 290, 93 S. E. 613; and *Carson* v. *Mott*, 117 Va. 21, 84 S. E. 12."

Every man is entitled to one fair trial, and no man is entitled to more.  It is for these reasons that motions for new trials, because of after-discovered evidence, are not looked upon with favor.  If this were not true, then justice, sometimes none too swift, would be more leaden-footed than ever, *Metropolitan Life Ins. Co.* v. *Botto* (Va.), 143 S. E. 625.

On behalf of the plaintiff there has been filed twenty-four affidavits, and, by chance doubtless, there have been filed twenty-four counter-affidavits for the Commonwealth.  None are entitled to consideration in any detail except those which tend to show that Keesee had a pistol.

That there was an ax at the place of the fight is true, but not of first importance.  Pauley does not claim that he shot Keesee because Keesee had an ax, but that he shot him because he had a pistol which he was attempting to draw.  Both Miller and Mrs. Keesee say that

Keesee was not armed at all. Pauley and his wife say that he was armed and that he had a pistol. Affiants relied upon lived in the immediate neighborhood, and came upon the scene soon after the killing. The entire defense was built around the claim that Keesee was about to shoot Pauley when he was himself shot. With this the issue, and practically the only issue, it is not reasonable to believe that all the neighbors knew on this subject could not have been discovered with ordinary diligence.

The more important affidavits are those of Charles Blankenship, W. M. Shupe, Emmet Jennings, Madge Miller, Bert Edwards and Mildred Thompson. Madge Miller, Bert Edwards and Mildred Thompson testified at the trial. Certainly there is no reason why they should not have been questioned about the Keesee pistol. Its urgent importance was then manifest. *Johnson* v. *Commonwealth*, 141 Va. 452, 126 S. E. 5; *Brugh* v. *Shanks*, 5 Leigh '(32 Va.) 598.

Jennings says there was a pistol on the ground by Keesee's side. Blankenship said that he could plainly see it in the bosom of Mrs. Keesee's dress. Shupe said that Keesee took a pistol out of his pocket about an hour and a half before the killing, and said that he was going to kill Ed Pauley. Bert Edwards saw the pistol in Mrs. Keesee's dress. Mildred Thompson's affidavit tends to show that Mrs. Keesee had a pistol. Madge Miller's affidavit is particularly interesting. It is quite elaborate, and is to the effect that her husband told her, in answer to questions, that Tom Keesee snapped his pistol in Ed Pauley's face and that it would have killed Pauley but that it was a cheap weapon and did not go off. She further states that her husband and Mrs. Keesee said that they were going to "frame" Mr. Pauley, and tried to get her to join in this conspiracy;

that her husband cursed her because she would not do this; and that both her husband and Mrs. Keesee had abused her and threatened her life on account of her refusal to perjure herself. This witness afterwards made another affidavit in which she said that all of her first statements were untrue, and had been made for money promised her. It further appears that when this last affidavit was made, she was cautioned as to the seriousness of the matter stated, and was told that it might result in her being prosecuted for perjury. Mrs. Blankenship states that at least five efforts were made to get her husband to make an affidavit, and that he had said that he knew nothing about the matter.

Asbury was a witness introduced on behalf of the accused at the trial. He was probably the first witness who reached the scene of the homicide. He appears to have examined the ground carefully, and to have recognized the importance of keeping matters exactly as they were until there had been some investigation. His statement is that he saw no pistol on the ground by Keesee or in the bosom of his wife. A number of other witnesses, who had opportunities for observation, say that there was no pistol hid about Mrs. Keesee's person and plainly visible in the manner testified to in the affidavits for the defendant, or visible at all.

Shupe, as we have seen, claimed that a short time before the killing Keesee had a pistol in his pocket, procured and held for the purpose of shooting; while Pauley testified that when he (Pauley) shot Keesee "he was in front of me getting a pistol out of a paper bag." It is not likely, if he had a pistol procured a short time before for the express purpose of shooting Pauley, that he would have wrapped it up in a paper bag.

There is no sound reason to believe that this testimony, if introduced at another trial, would change the

results. · We are also of opinion that if the facts set out in these affidavits for the accused were true in fact, they could have been ascertained by exercise of ordinary diligence. Pauley's defense is based upon the claim that Keesee was trying to shoot him. In such circumstances, the first question which would have occurred to anybody would have been, was the dead man armed and how? Moreover, at the most, all that can be said of this testimony is that it tends to corroborate the evidence of Pauley and his wife, and something more than this is necessary. No new facts are sought to be established. It was but additional testimony to buttress the defendant's statement made at the trial.

For these reasons we think the trial court was plainly right in refusing to order a new trial.

There is no error in the judgment complained of, and it will be affirmed.

*Affirmed.*