## Staunton.

## BARSA V. KATOR.

September 20, 1917.

Absent, Burks, J.

1. NEW TRIAL—*Newly Discovered Evidence.*—In order to afford a proper ground for granting a new trial, the newly discovered evidence must have been discovered since the former trial; be such as by reasonable diligence on the part of the defendant could not have been secured at the former trial; must be material in its object, and not merely cumulative, corroborative and collateral; must be such as ought to produce, on another trial, an opposite result on the merits; and must go to the merits of the case, and not merely to impeach the character of a former witness. Unless these circumstances concur a new trial is never granted on the ground of after discovered evidence, and even where they do concur a new trial is granted only with great reluctance and with special care and caution.

2. NEW TRIAL—*Newly Discovered Evidence—Case at Bar.*—Plaintiff brought an action of assumpsit against defendant to recover a balance claimed by plaintiff to have been due him by defendant upon a correct settlement of accounts growing out of numerous transactions between them. Plaintiff was engaged in the business of a peddler, for which defendant furnished him credit, buying goods from wholesale houses for plaintiff and turning over the goods to him from time to time as he needed them. Defendant claimed that plaintiff secretly carried away goods from his room in defendant's apartment, credit for which should have been given by plaintiff to defendant. Defendant in his testimony stated that plaintiff left his house with such goods. A witness for defendant testified that he saw the goods in question before the plaintiff left the home of defendant, described what kind of goods they were, fixed their value, and stated that plaintiff took two or three loads the day he moved out; that the plaintiff took the goods and went out, witness staying in the house. Plaintiff in rebuttal testified in effect that he had no goods whatever left in his hands at the termination of his transactions with defendant, and denied that he had any goods for some time afterwards. Upon a

verdict for plaintiff defendant moved for a new trial, on the ground of after discovered evidence. The alleged after discovered evidence consisted, as shown by their affidavits, of the testimony of several witnesses, none of whom were witnesses on the trial of the case, that they saw plaintiff carrying goods through the streets from the defendant's house after the close of the transactions between plaintiff and defendant. Other witnesses made affidavit that they would testify that they heard plaintiff shortly after the close of his transactions with defendant say that he had goods of large value in his possession.

*Held:* That the after discovered evidence in question was not cumulative, nor merely corroborative, nor collateral, nor in impeachment of former witnesses, but falls within all the rules governing the subject, as set forth in the first syllabus.

3. NEW TRIAL—*Newly Discovered Evidence—Cumulative.*—Although the newly discovered evidence may tend to prove the same issue as the evidence introduced on the former trial, yet if dissimilar in kind, it is not cumulative. In the instant case the fact testified to by the defendant and his witness tended to prove the same proposition which the after discovered evidence tended to prove, namely, that there were goods in possession of the plaintiff derived from his transactions with the defendant and for which the latter should have had credit; the cormer evidence consisted of the bare statements of the fact of the existence of such goods and of the plaintiff having left the home of defendant with them or of his having carried them away; the latter evidence was more specific, stated facts attending the carrying away of the goods, subsequent in point of time to the status of the case on the subject of the existence of the goods as left by the testimony on the former trial, showed that the conveying away was secretive, also was positive proof, if true, of the place to which the goods were taken, etc.. In short was more circumstantial and was evidence of a different kind and character from that introduced on the subject of the goods at the former trial.

4. NEW TRIAL—*Newly Discovered Evidence—Due Diligence.*—Where a witness whose testimony is relied upon as newly discovered, although a relative of the party seeking the new trial, had for ten months prior to the trial been living in another State, and was living there at the time of the trial, and the character of a material part of his evidence was such that it was not probable that by the exercise of reasonable forethought it would have occurred to the party to inquire of the witness concerning it, the non-production of his testimony at the trial does not show a want of diligence.

Error to a judgment of the Circuit Court of Wise county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*R. T. Irvine,* for the plaintiff in error.

*Vicars & Peery* and *Morton & Parker,* for the defendant in error.

SIMS, J., delivered the opinion of the court.

This case is an action of assumpsit by the defendant in error—hereinafter referred to as plaintiff—against the plaintiff in error—hereinafter referred to as defendant—seeking to recover a balance of $1,544.50 claimed by plaintiff to have been due him by defendant upon a correct settlement of accounts growing out of numerous transactions beween them, extending through a period of about two years, during which the plaintiff claims to have paid over to defendant an aggregate of some $10,800.00. The plaintiff was engaged in the business of a peddler, for which the defendant furnished him credit, the latter buying goods from wholesale houses for plaintiff, turning over the goods to him from time to time as he needed them, and the plaintiff, as he came in from his peddling trips, turning over money in small sums to defendant; and there were certain deposits of money in bank by plaintiff to the credit of defendant, during an absence of defendant and also the purchase of a lot of land by defendant for plaintiff and payments of purchase money therefor in installments and there were other alleged transactions between them.

Both plaintiff and defendant are Syrians and for the

most part so were the witnesses in the case on its trial, the character and veracity of many of them being made the subject of question in the case.

There was a trial by jury resulting in a verdict for the plaintiff for said sum of $1,544.50, which the defendant, at a subsequent term, moved the trial court to set aside on the grounds of after discovered evidence and of improper conduct of the jury. Affidavits were filed for and against such motion and the court overruled the motion and entered judgment for the plaintiff in accordance with the verdict of the jury. This action of such court is made the sole assignment of error in the case.

A number of instances of after discovered evidence are relied on to sustain said motion, as well as the alleged misconduct of the jury, but in the view we take of the case, only the after discovered evidence bearing upon one issue need be considered, and the other instances of alleged after discovered evidence and the alleged misconduct of the jury need not be considered.

The incident upon which the after discovered evidence which we will consider bears, is that of the carrying away by plaintiff of goods from his room in defendant's apartments, partly by night and in a secretive way by day. These goods, if they were so carried away, were a portion of those obtained by plaintiff of defendant as aforesaid, and were in the hands of the former at the close of his transactions with the latter and credit for their · value should have been given by the plaintiff to defendant. Their value was claimed by defendant to be not less than eight or nine hundred dollars. The plaintiff gave the defendant no credit whatever for any of such goods. In his testimony in the case on his first examination the plaintiff made no mention of his having or not having any goods on hand at the close of his transactions with defendant, stating the transactions between himself and the defen-

dant, and the result of them, as if there were no goods whatever left in his hands at the close of such transactions derived by him from the defendant. In his testimony in the case, in his own behalf, the defendant first made mention of his claim that the plaintiff had on hand at the close of the transactions aforesaid such goods, and that he left defendant's home with such goods of "not less than eight or nine hundred dollars" value. Defendant in his testimony on this subject stated the bare fact that plaintiff left his house with such goods. Frank Carter, a witness for defendant, testified on this subject that he saw the goods in question before the plaintiff left the home of defendant, describing what kind of goods they were, fixed their value, in his judgment, and stated that the plaintiff "took two or three loads (the) day he moved out." That witness was in defendant's home at the time. That the plaintiff "took the goods and went out," witness staying in the house. "He come in and took the goods and leave the room and come back after another load." That witness *thought* plaintiff took the goods to Mike Barsa's, but that he didn't know where he took them.

The plaintiff in rebuttal testified in effect that he had no goods whatever left in his hands as the result of the transactions between him and the defendant and denied that he had any goods for some time afterwards until he got credit from another Syrian and began peddling in a small way, at first with two dozen hose, then with some old country pictures.

The alleged after discovered evidence, which we shall consider as aforesaid, consists, as shown by their affidavits, of testimony which will be given, if they are allowed to testify, by five witnesses, none of whom were witnesses on the trial of this case, namely: H. R. Stone, G. C. Young, F. M. Strong, a Justice of the Peace, F. A. Mahan,

and Joe Hannie. Briefly stated, this testimony, in so far as it would bear on the issue of fact in question, would be, in effect, as follows:

Stone would testify that at the time in question, following the "split up" between plaintiff and defendant, he saw the plaintiff "make several trips from George Barsa's" (the defendant) "to Mike Barsa's carrying a peddler's pack each time, which seemed to be filled as much as usual. On that occasion I saw him take several loads a day and he then went along the alley immediately in the rear of the stores and between the stores and the railroad. I also saw him take one or more loads in the night time from George Barsa's to Mike Barsa's along Main street, but whenever he went in the day time he seemed to go the back alley."

Young would testify that at the time in question, "one night about eleven o'clock" he saw the plaintiff pass "down the street in the direction of Mike Barsa's house with a big pack on his back."

Strong would testify that at the time in question the plaintiff came into the place of business of F. A. Mahan and he "heard Mahan say to him in substance that he ought to set up a store for himself as he had plenty of goods," and that plaintiff said: "I have got plenty of goods but I don't want no store." That to a question of Mahan which Strong thought was whether plaintiff was moving down to Mike Barsa's, the plaintiff answered "yes."

Mahan would testify that at the time in question plaintiff was in his butcher's shop and told him that "he was going tomorrow and go down to Mike Barsa's" and that affiant Mahan said to the plaintiff: "Toney, you seem to have plenty of goods, you ought to set yourself up a store," to which the plaintiff replied: "I have got plenty of goods,

but I don't want no store." That plaintiff said he "was going to move down to Mike Barsa's and take his goods there."

Joe Hannie would testify that at the time in question the plaintiff moved the goods in question "to Mike Barsa's and I helped him some in moving. I asked him at one time how much goods he had. He said about $1,000.00 worth. I asked him to sell me $100.00 worth for me to peddle with and told him I would pay him cash money, but he said no, he would not sell them to me. I asked him if they were not his goods and if Mr. Barsa had any interest in them. I thought maybe he had not paid Mr. Barsa for the goods, and he said no, they were all his goods, that he had paid Mr. Barsa for them and he did not owe Mr. Barsa anything on them and he said Mr. Barsa did not owe him anything. He said Mr. Barsa had quit buying goods for him. I carried two loads to Mike Barsa's for him. One time in the day I went with him and we went down the back alley between the houses; the next time was in the night and we went down Main street to Mike Barsa's store. Both times I turned over my load to Mike Barsa and he took them into the house."

The defendant by his affidavit states in substance that he had no knowledge of said after discovered evidence at the time of the trial and could not by the exercise of reasonable diligence have obtained such knowledge.

Mike Barsa in a counter affidavit stated that the plaintiff brought no goods to his place.

The rules on the subject of granting a new trial are well settled. As stated in 2 Barton's L. Pr., p. 734, in order to afford a proper ground for granting a new trial the evidence—

"1. Must have been discovered since the former trial;

"2. Be such as by reasonable diligence on the part of the defendant could not have been secured at the former trial;

"3. Must be material in its object, and not merely cumulative, corroborative and collateral; and

"4. Must be such as ought to produce, on another trial, an opposite result on the merits;

"5. Must go to the merits of the case, and not merely to impeach the character of a former witness.

"Unless these circumstances concur a new trial is never granted on the ground of after discovered evidence, and even where they do concur a new trial is granted only with great reluctance and with special care and caution."

It appears not only from the affidavit of the defendant but also from the nature of the said after discovered evidence itself, above noted, that such evidence falls within all of the rules above stated. (See also authorities cited on this subject in 10 Encyl. Dig. Va. & W. Va. Rep., pp. 447-451.)

It is contended for plaintiff that as Joe Hannie "was a relative of defendant, engaged also in peddling, lived at Jenkins, scarcely thirty miles from Appalachia" (the home of defendant) "it is unreasonable to suppose that the defendant did not or could not have known of such information as is submitted by" this affiant, "long before the trial; especially is this true when it is considered that this case had been pending for over two years." But for ten months prior to the trial this affiant had been living at "Jenkins," (which is in Kentucky); was living there at the time of the trial, and hence he had been for this time living away from the defendant and the character of a material part of this evidence is such that it is not probable that by the exercise of reasonable forethought it would have occurred to the defendant to inquire of this affiant concerning it.

It is contended for plaintiff that the entire evidence above noted is purely cumulative, corroborative and in impeachment of former witnesses and that it does not in any sense go to the real merits of the controversy, and could not by any possibility produce on another trial any result

38

other than that reached by the jury in this case. In this connection it should be noted that no witness on the trial of the case testified to the same kind and character of facts as those which are covered by the afterdiscovered evidence aforesaid.

As said by Christian, J., in delivering the opinion of this court in *St. John's Ex'or* v. *Alderson*, 32 Gratt. (73 Va.) 140; "* * * The kind and character of facts offered as newly discovered evidence make the true distinction. The facts offered may tend to prove the same issue," (as the evidence introduced on the former trial) "and yet be so dissimilar in kind as to afford no pretence for saying they are merely cumulative."

Again, quoting from the case of *Guyot* v. *Butts*, 4 Wend. (N. Y.) 579, the same learned judge in such opinion says: "* * * The courts have sometimes used expressions seeming to warrant the inference that proof which goes to establish the same issue that the evidence on the first trial was introduced to establish is cumulative. If the evidence newly discovered, as well as that introduced on the trial, had a direct bearing on the issue, it may be cumulative. But we are not to look at the effect to be produced as furnishing a criterion by which all doubts in relation to this kind of evidence are to be settled. The kind and character of the facts make the *description*" (evidently a misprint, for distinction). "It is their resemblance that makes them cumulative. The facts may tend to prove the same proposition, and yet be so dissimilar as to afford no pretence for saying they are cumulative." See monographic note 32 Gratt. Va. Rep. Anno., p. 60, and authorities cited.

So in the instant case while the statement of fact testified to by the defendant and his witness, Carter, tended to prove the same proposition which the after discovered evidence aforesaid tended to prove, namely, that there were goods in possession of the plaintiff derived from his trans-

actions with the defendant and for which the latter should
have had credit, the former evidence consisted of the bare
statements of the fact of the existence of such goods and
of the plaintiff having left the home of defendant with
them or of his having carried them away; the latter evi-
dence was more specific, stated facts attending the carry-
ing away of the goods, subsequent in point of time to the
status of the case on the subject of the existence of the
goods as left by the testimony on the former trial, showed
that the conveying away was secretive, also was positive
proof, if true, of the place to which the goods were taken,
etc., in short was more circumstantial and was evidence
of a different kind and character from that introduced on
the subject of the goods at the former trial.

Again: The admissions of the plaintiff alleged in the
affidavit of Hannie is not cumulative but independent evi-
dence. *Preston* v. *Otey,* 88 Va. 491, 14 S. E. 68.

The after discovered evidence in question was therefore
not cumulative. Nor, for the same reasons, was it merely
corroborative, or collateral, or in impeachment of former
witnesses.

On the question of whether the newly discovered evi-
dence under consideration ought on another trial to pro-
duce an opposite result on the merits, it seems to us mani-
fest that if true it ought to do so. It bears directly on the
issue of an important fact in the case, going to the extent
of $800 or $900 reduction of the verdict of $1,544.50, if
found to be true. It is supported by affidavits of witnesses,
several of whom are not Syrians and who seem to be men
of character and standing and free from all prejudice or
interest in the case. If this evidence is true, a manifest
injustice has been done the defendant. Hence, while this
court is reluctant and indisposed to come to a different
conclusion from that of a trial judge in the exercise of the
discretion vested in the latter in the matter of granting or

refusing to grant a new trial, we are constrained to reach a different conclusion in the case before us from that reached in the court below, and it seems to us that a jury should pass upon the credibility of the after-discovered evidence aforesaid.

Therefore, for the foregoing reasons we are of opinion that there was error in the action of the trial court in refusing to grant a new trial, and the judgment for that reason must be reversed.

*Reversed.*