## State of Vermont v. Harold Jackson

[ 227 A.2d 280 ]

December Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 7, 1967

*Earle Bishop* for petitioner.

*Robert E. West,* State's Attorney, and *Alan Cheever,* Assistant Attorney General, for the State.

**Keyser, J.** The respondent was tried by jury and convicted on November 30, 1965, in Rutland County Court of the crime of rape upon a girl 18 years of age. Respondent appealed his conviction to this court. Pending this appeal respondent filed a petition in this court for a new trial under the provisions of 12 V.S.A. §2354 based on the ground of newly discovered evidence.

The respondent alleges in his petition that the victim of the alleged rape testified that she had not experienced the act of intercourse in the year 1965 other than the occasion of the alleged rape on August 15, 1965; and that the records of the City of Burlington show the complainant gave birth to a male child on February 4, 1966, at the Mary Fletcher Hospital, copy of such record being attached to respondent's petition.

The respondent alleges the conclusion that this evidence would affect the credibility of the witness since her testimony was the only evidence that the respondent had committed the crime alleged. He also claims the evidence was competent to show the reputation and character of the witness as well as a predisposition to consent.

The rules on the subject of granting a new trial on the ground of newly discovered evidence are well settled. To warrant the granting of a new trial on such ground, it must appear: (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative or impeaching. 39 Am. Jur., New Trial, §158; *State* v. *Ciocca,* 126 Vt. 184, 225 A.2d 65, *State* v. *Brown,* 122 Vt. 59, 63, 163 A.2d 845; *London* v. *Smart,* 127 Me. 377, 143 A. 466; *Barsa* v. *Kator,* 121 Va. 290, 93 S.E. 613.

"Unless these circumstances concur, a new trial is never granted on the ground of after-discovered evidence, and even where they do concur a new trial is granted only with great reluctance and with special care and caution." *Barsa* v. *Kator, supra,* at p. 615 (S.E.)

The essential factors involved in this case are whether the proposed new evidence probably will change the result on retrial, is material to the issue, and is not merely impeaching.

In passing upon the propriety of granting or denying the respondent's motion, we must necessarily consider all of the testimony in the case. *Doherty v. State of Vermont,* 73 Vt. 380, 389, 50 A. 1113. See Supreme Court Rule 4(3). However, we have been presented only with a transcript of the testimony of the prosecutrix and Dr. Joseph C. Stickney. We are not informed whether there were other witnesses but it was stated in argument that the respondent did not testify. From the above testimony the jury could reasonably have found the following facts.

Late in the afternoon of August 15, 1966, the prosecutrix was walking on the street in Rutland City with a girl friend when a car pulled up beside them driven by a Richard Coltey. There were four other boys in the car, the petitioner Harold Jackson, Ronald Lamb, John Lamb and Ernest Prescott. Ronald Lamb asked the prosecutrix if she wanted to go for a ride and she said "no not with a car full of boys." Lamb then asked her if she would go to ride with him. As a result, arrangements were made that she would go home for permission to go out with him in his own car. Later, Lamb came to her house and picked her up. They rode around a little, then Lamb drove up the so-called Quarterline Road and parked in a wooded area on a roadway leading off that road. This was about 6 P.M.

In about ten or fifteen minutes Richard Coltey drove up and parked his car down the road from Lamb's car. Coltey had the same boys with him except Ronald Lamb and in addition one Charles Lebo. The boys got out of their car and came to Lamb's. Jackson got in Lamb's car beside the prosecutrix. The Lebo boy asked Ronald to get out so to speak to him. When he did Jackson put his arms around the girl but she repulsed him. Shortly Ronald got back in his car, Jackson got out and the five boys walked down the road but returned in about ten minutes.

Charlie Lebo again asked Ronald to get out of the car. He did and Jackson got back into the car again beside the girl. Lebo asked Ronald to go to Coltey's car as they wanted to see him. The prosecutrix asked to go with Ronald but Jackson told her that she was staying right there. As the boys started walking down the road, Jackson made a grab for the girl. She screamed for Ronald but he did not return. He slapped her on the side of the head. He forceably removed all of the girl's clothes ripping off her bra in the process. Jackson then forced the prosecutrix to get into the back seat and pro-

ceeded to ravish her despite her pleas to leave her alone, her screaming, crying, protests, and resistance. After this act, the victim asked to get out of the car and get dressed as she wanted to go home, but Jackson said "who's next." It was not until "all the guys had gotten through" that the victim saw Ronald again.

It was about 9:30 P.M. before the prosecutrix was able to leave the car. She asked for her clothes so to get dressed and go home. Ronald found them for her but before she could get dressed, Jackson grabbed her arm and said he was going to take her again. She slipped and fell onto the ground skinning her body. Then Jackson again forceably had intercourse with her on the ground in spite of her pleas and resistance.

The prosecutrix was then permitted to get dressed. Ronald drove her home but previous to this Ronald had told the girl in Jackson's presence about reporting the matter to the police. After this Jackson insisted on riding back with them. Before they reached the girl's home Jackson slapped her in the head and told her she'd better keep her mouth shut.

The next afternoon, August 16, the girl told her mother what had happened. This precipitated the matter being immediately reported to the police authorities and a physcial examination of the girl by Dr. Joseph C. Stickney that same day. He testified that she was nervous and apprehensive; that the left side of her head was red; that her body was covered with black and blue marks, bruises and scratches; that black and blue marks appeared on her breasts and were quite extensive on her lower abdomen and in the labium and genital area. The doctor testified that in his opinion the girl "was severely, sexually misused" within the last "day or so."

The respondent claims in his motion that the newly discovered evidence "would affect the credibility of the witness." The basis of this claim is that such evidence contradicts the testimony of the prosecutrix that she had no sexual relations in 1965 other than what occurred on August 15, 1965. The motion for a new trial on this ground must be denied.

In a criminal prosecution, an application for a new trial will be denied where it appears that the only tendency of the newly discovered evidence is to impeach, contradict or discredit the prosecuting witness. 39 Am. Jur., New Trial, §167; 66 C.J.S., New Trial, §114.

■ Further, newly discovered evidence, in order to constitute ground for a new trial must be relevant under the issues. 66 C.J.S., New Trial, §109, n. 3, and must also be material. Id. §110, n. 16; *Quigley* v. *Wiley,* 108 Vt. 173, 175, 183 Atl. 206.

In *State* v. *Danforth,* 73 N.H. 215, 60 Atl. 839 the court said at p. 842A.:

"Evidence which 'tended simply to impeach the state's witness and did not go to the merits of the case' would not authorize the court to order a new trial . . . . To justify such an order, the newly discovered evidence 'must be material to the issue joined; material to the point to be decided by the verdict, and not collateral. It must go to the merits of the case, and not to discredit or impeach a former witness.' "

"The true test is that, if the effect of the contradiction is only to impeach or discredit an opposing party or witness in respect to his other testimony, a new trial will not for that reason be granted." *Shalit* v. *Shalit,* 126 Me. 291, 138 Atl. 70, 72.

"It is the general rule that a new trial will not be granted on the ground of newly discovered evidence when the only effect of such evidence is to impeach an adverse party or witness. (Cases cited) Such evidence may incidentally impeach, but any testimony offered by a party in explanation or in contradiction of the testimony of his adversary generally possesses the flavor of impeachment. (Cases cited)." *Bradley* v. *Kelley & Trustee,* 105 Vt. 478, 490-491, 168 Atl. 554.

■ Evidence is impeaching so as to bar new trial if it is outside the evidence already given and impeaches that evidence by attacking the character, the motives, the integrity or veracity of those who gave the evidence. *Johnston* v. *Belk-McKnight Co. of Newberry,* 188 S.C. 149, 198 S.E. 395.

■■ The petitioner claims the new evidence is competent to show the reputation and character of the witness. Evidence of bad reputation or character is one mode by which the credibility of a witness may be attacked. The only function of such evidence is impeachment. Thus, it is not ground for a new trial.

■ The respondent alleges the new evidence is evidence of a predisposition to consent. Even if this evidence is material and ad-

mitted on retrial, the entire evidence strongly preponderates against the respondent's claim that from it consent could be inferred by the jury. The mere fact that the prosecutrix may have had sexual relations with a third person on one occasion does not prove that she gave her consent to the act of intercourse with the respondent. Consent is purely a mental process. The facts and circumstances disclosed by the evidence show beyond any reasonable doubt in our minds that consent was not given even admitting the after-discovered evidence.

Moreover, it is the rule of this jurisdiction as announced by Judge Redfield in *Stevens* v. *Beach,* 12 Vt. 585, that a witness may be cross-examined as to collateral facts which tend to test his accuracy or veracity, but the cross-examiner must be content with the witness' answers, and cannot contradict them by independent proof. In *State* v. *Long,* 95 Vt. 485, 492, 115 A. 734, this court said: "This holding has never been departed from in this state."

It is to be noted that in *State* v. *Long, supra,* a witness for the State was asked in cross-examination about his relations with a woman. He denied any criminal intimacy with her, and the court did not permit the respondent to show the statement untrue because it was a collateral matter. This rule is cited with approval in *State* v. *Teitle,* 117 Vt. 190, 196, 90 A.2d 562.

Taking the evidence before us together with the new evidence, would a different result be reached upon a new trial? To do so, it must appear that such new evidence has sufficient probative force or weight to produce a result different from that obtained at the trial which has been had. 39 Am. Jur., New Trial, §168; *State* v. *Brown, supra,* p. 63; *London* v. *Smart, supra,* 468 (A.) ; *Crouch* v. *Commonwealth,* 172 Ky. 471, 189 S.W. 698.

In *State* v. *Doherty,* 72 Vt. 381, 403 we said:

> "(I)f the testimony that it is claimed has been newly discovered is of such a character as to leave a reasonable doubt of the respondent's guilt when taken in connection with all the rest of the testimony, it would be sufficient and we should grant him a new trial."

As stated in *Johnson* v. *Rule,* 105 Vt. 249, 254, 164 Atl. 681: "This Court has strictly adhered to the rule that a new trial on the ground of newly discovered evidence will not be granted unless evi-

dence is so controlling or persuasive as to make it reasonably probable that it would produce a different result . . . ."

The petitioner alleges that the evidence of the prosecutrix was the only evidence of the alleged rape upon her. There is other supporting evidence, most significant of which is the testimony of Dr. Stickney as well as the lack of any testimony from the respondent himself.

The evidence taken as a whole overwhelms against the petitioner. Although serious incriminating evidence was produced at the trial of petitioner, he permitted this proof to stand unchallenged and unrefuted. This he did at his peril and the risk of non-persuasion becomes his. *State* v. *Coburn,* 122 Vt. 102, 109, 165 A.2d 349.

In that case Chief Justice Holden said at p. 109:

"At this point in the trial, if the respondent refuses to meet the challenge of the State's evidence, his default is often detrimental to his acquittal. To be sure, the law imposes no legal obligation upon him to take the offensive, and if he refuses, no admission of guilt is involved. But to say that he may decline to defend without adverse effect obscures his risk and ignores reality."

Considering the evidence before us including the after-discovered evidence we are not convinced that a different result would be reached upon a new trial. We fail to discover that the petitioner suffered any injustice upon his trial. The character of the new evidence is not such that generates in our minds a reasonable doubt of the petitioner's guilt.

*Petition dismissed.*