2007 VT 138

# State of Vermont v. Hope B. Schreiner

[944 A.2d 250]

No. 06-440

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 14, 2007

*Dan M. Davis*, Windham County State's Attorney, and *David W. Gartenstein*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Jesse M. Corum IV*, of *Gale, Corum, Mabie, Cook & Prodan*, Brattleboro, and *Michael L. Levine* of *Michael Levine, P.C.*, Scarsdale, New York, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant was convicted of second-degree murder after a jury trial in the Windham District Court. She now appeals, arguing that the trial court erred in: (1) denying her motion for a continuance; (2) denying her an evidentiary hearing on her motion for a new trial; (3) denying her motion for a new trial; and (4) not including a manslaughter charge in the instructions given to the jury. She argues further that her conviction must be reversed because she received ineffective assistance of counsel. We affirm in all respects.

¶ 2. The evidence at trial showed the following. On June 2, 2004, defendant called 911 and reported that she had just arrived home and found her husband with his head bloodied, "like he fell out of his car." Within ten minutes, rescue personnel arrived at the scene and discovered the body of defendant's husband, Robert

Schreiner, in the driveway of the Schreiners' Townshend residence. Based on their observations of the body and the dried blood near Mr. Schreiner's head, the responders concluded that Mr. Schreiner had died within the past two to three hours. When defendant spoke with medical personnel, she stated that she had arrived home a half-hour before and, after briefly going inside, came out and discovered her husband's body.

¶ 3. Approximately a half-hour later, defendant spoke with the first police officers to arrive at the scene. Defendant explained to one of these officers that she had come home from playing tennis between forty minutes and half an hour before calling the police, went in the house to look for her husband, and discovered his body upon taking the dogs out for a walk. Defendant would give somewhat different versions of this account to several other investigating officers.

¶ 4. The medical examiner concluded that Mr. Schreiner's death had been caused by blunt-force trauma that had resulted in several puncture wounds and marks that showed a wedge-shaped pattern with three prongs. No murder weapon was ever found, though there was testimony concerning a three-pronged rake that was missing from its customary storage place.

¶ 5. The examiner found evidence that Mr. Schreiner had ingested an extremely large dose of Ambien, a sleeping pill, sometime in the morning before his death. DNA evidence presented at trial established that traces of Mr. Schreiner's blood were present on the door knob to the Schreiner residence, in several garbage bags handled by defendant, on the storm door in the basement, and near defendant's vehicle. There was evidence that defendant insisted on doing laundry as she was talking to the police.

¶ 6. At trial, a friend of defendant testified that, while driving defendant to a friend's home on the night of the murder, she had asked defendant "why?" and that defendant responded that she had "just snapped." According to the friend, defendant then asked her to retrieve a bag of cat litter from the basement because it was "full of blood." The friend testified that defendant went on to make several other potentially incriminating statements, including an admission that she had "put sleeping pills in [her husband's] coffee." She made the same admission about the sleeping pills to her son. A neighbor of defendant testified that when the neighbor

expressed concern that a murderer was on the loose in the neighborhood, defendant whispered to her "Don't worry. I did it."

¶ 7. The State also presented evidence of motive. Defendant was unhappy in her marriage and told others that she wanted to live separately from her husband. She became involved in a sexually intimate relationship with another man in the months before her husband's death and discussed this relationship with others.

¶ 8. In the final days of the State's case, defense counsel received an unsolicited letter from Bob Hurlbut, an inmate at the state prison in Berlin, New Hampshire. Hurlbut suggested that his second cousin may have been involved in Mr. Schreiner's murder. Defense counsel, and an investigator working on his behalf, set about investigating Hurlbut's claim, which led to a taped interview with Hurlbut. In that interview, Hurlbut related that, in 2004, his cousin said that he had to "take care" of some "dude" in Townshend who owed him money for work on a car. Hurlbut further stated that his cousin had admitted to committing several, unspecified murders in "early 2004." In the next twenty-four hours, the investigator learned that a man with the same name as the cousin was living in Hartford, Vermont and ran an auto salvage company. The defense team also discovered that the cousin was one of the suspects in an unsolved murder of a woman in 1987. In addition, defendant's son told defense counsel that Mr. Schreiner had purchased auto parts from a salvage yard and refused to pay for them because they did not work.

¶ 9. The defense lawyer first provided much of the above information to the court with an oral request for a continuance "for at least enough time to try to locate" the cousin, and then "[i]deally a week, but at least a couple days." The court read the Hurlbut letter and denied the continuance because the letter was "full of . . . speculation" and lacked any "specific information." The next day, after all the evidence in the trial had been concluded, the defense renewed the motion relying particularly on the tape of a half-hour conversation with Hurlbut. Defense counsel asked the court to listen to the tape. The court refused based on defense counsel's representation of its contents and denied the motion again finding the evidence "speculative."

¶ 10. Later in the day, defendant submitted a written "Restatement of Prior Oral Application." The court responded with a written decision, ruling that it "was extremely doubtful that the investigation would result in the discovery of admissible evidence."

¶ 11. At the end of the trial, the court instructed the jury that it could find defendant guilty of either first- or second-degree murder, or not guilty of either, and defendant did not object to this charge on the record. On March 24, the jury returned a verdict of guilty on the charge of second-degree murder.

¶ 12. On April 6, defendant filed, inter alia, a motion for a new trial based on newly discovered evidence, including both evidence generated from the investigation following the Hurlbut letter and evidence from defendant's daughter that she had taken a garden rake that had been identified as a possible murder weapon. Included in the State's memorandum of law opposing this motion was new factual information concerning Hurlbut's credibility, drawn from statements made by a police officer supposedly familiar with Mr. Hurlbut. Ultimately, the court denied the new-trial motion. The court stated that "[i]f believed," the alternative-perpetrator evidence would "probably change the result upon retrial." However, the court concluded that Mr. Hurlbut was "patently and inherently incredible," especially in light of the factual information included in the State's motion opposing a new trial. This appeal followed.

¶ 13. Defendant's first contention is that the trial court committed reversible error by denying her motion for a continuance. Although defendant's brief discusses this issue only summarily, the substance of her argument is that, in light of the evidence she presented in support of this motion, the court abused its discretion in denying it.

¶ 14. Because a motion to continue must be decided in the light of the circumstances surrounding each individual case, we will not interfere with the trial court's decision if there is a reasonable basis to support it. *State v. Hanlon*, 164 Vt. 125, 128, 665 A.2d 603, 605 (1995). We will reverse a trial court's decision on such a motion only if that decision constituted an abuse of discretion. *State v. Ahearn*, 137 Vt. 253, 267, 403 A.2d 696, 705 (1979). Thus, it is not enough for defendant to show that any court, including this one, might have reached a different conclusion. *State v. White*, 172 Vt. 493, 500, 782 A.2d 1187, 1192 (2001). Defendant argues that the trial court abused its discretion by not allowing her the opportunity to develop further the evidence relating to Mr. Hurlbut's allegations. Defendant also argues that the court could have granted a mere two-day continuance without prejudice to the State.

¶ 15. We cannot conclude that the trial court's decision constituted an abuse of discretion. When defendant moved for a continuance, she relied primarily on Mr. Hurlbut's vague and uncorroborated statement to support the position that she should be allowed to engage in a mid-trial investigation to elicit admissible evidence. She was pursuing the theory that the cousin was the actual perpetrator of the crime. Testimony about a possible alternative perpetrator, like Mr. Hurlbut's, may be admitted only " 'as long as motive and opportunity have been shown and . . . there is also some evidence to . . . connect [the] third person to the crime charged.' " *State v. Grega*, 168 Vt. 363, 375, 721 A.2d 445, 454 (1998) (quoting *State v. Gilman*, 158 Vt. 210, 214, 608 A.2d 660, 663 (1992)); see also *State v. Gibney*, 2003 VT 26, ¶ 24, 175 Vt. 180, 825 A.2d 32 (same). Although Mr. Hurlbut did suggest a possible motive, his statements did not show that his cousin had opportunity to commit the crime, or even that he knew Mr. Schreiner and had any interaction with him.

¶ 16. Nor do we see this as an issue of prejudice to the prosecution. Defendant's motion was made immediately before closing arguments on Thursday, March 23, at the end of a trial that was about to be submitted to the jury. The trial was concluded with a jury verdict on Friday, March 24. Granting defendant's motion would necessarily have delayed the submission of the case to the jury into the next week, leaving the jury in limbo for days while defendant conducted the investigation. Apart from the concern that memories of the evidence fade, each day increased the risk of prejudice to the deliberative function of the jury or loss of jurors.

¶ 17. We now generally allow jury separation, even in a first-degree murder case such as this. See V.R.Cr.P. 23(d). This policy only heightens the concern about prejudice to the deliberative function of the jury. As we said in *State v. Brisson*, 124 Vt. 211, 215, 201 A.2d 881, 883 (1964): "Events or circumstances which might not be of concern where a jury is under the control and scrutiny of the court itself during trial, might be factors of greater weight when their effect on a jury at large in the community is considered." Of course, the concern was already heightened by the widespread media coverage of the case. See *State v. Schaefer*, 157 Vt. 339, 351, 599 A.2d 337, 345-46 (1991) (acknowledging that some forms of "publicity . . . may inflame and

prejudice the whole community and prevent the impanelling of an unbiased jury").

¶ 18. The trial judge's statements indicate that she appropriately balanced the likelihood that defendant's investigative efforts would produce important admissible evidence against the risk to the deliberative function of the jury. This Court will not interfere with discretionary rulings that have a reasonable basis, *White*, 172 Vt. at 500, 782 A.2d at 1192, and we are unwilling to conclude that the trial court's decision here was without such a basis.

¶ 19. Defendant next contends that the trial court erred in denying her motion for a new trial, or in the alternative, in not granting her an evidentiary hearing before denying that motion. We start with the latter claim, and then consider the court's reasoning in denying the motion.

¶ 20. Defendant's post-trial motion sought a new trial along with specific related actions of the court: (1) an evidentiary hearing; (2) a commission to take the depositions of Robert Hurlbut and Eddie Tobin, residents of New Hampshire; and (3) authorization to take the deposition of Hurlbut's cousin and others. With respect to the claim that Hurlbut's cousin killed Mr. Schreiner, defendant once again alleged the facts presented in connection with the motion for a continuance. Defendant presented what she argued to be new evidence, namely, the testimony of her daughter that she realized, after trial, that she had taken a rake from the home after the funeral that the State had intimated might have been the murder weapon.

¶ 21. The denial of the request to take depositions was in accord with *State v. Wheel*, 157 Vt. 648, 649, 596 A.2d 372, 372 (1991) (mem.), where we held that Vermont Rule of Criminal Procedure 15 "does not authorize post-trial depositions." V.R.Cr.P. 15. We did leave open the possibility that a trial court could order a post-trial deposition in connection with the evidentiary hearing on a motion for a new trial "in an exceptional case." *Id.* The trial court here could find that this was not an "exceptional case" where depositions would be helpful. The court had the essential information from Hurlbut, and there had been very limited investigation of the cousin and his associates.

¶ 22. Defendant has a better legal argument with respect to her request for an evidentiary hearing. In *State v. Unwin*, 142 Vt. 562, 564, 458 A.2d 1107, 1109 (1983), we ruled that a defendant is

entitled to an evidentiary hearing on a motion for a new trial based on newly discovered evidence "unless the motion fails to state with particularity the grounds relied upon, or is patently frivolous or totally lacking in merit." In this case, we agree that the grounds for defendant's motion were stated with particularity. The district court ruled, however, that the motion was totally lacking in merit. Thus, we must decide whether we agree with this aspect of the court's *Unwin* analysis.

¶ 23. The trial court determined defendant's motion to be lacking in merit by first concluding that defendant's evidence would probably lead to a different verdict if the evidence were believed. The court nevertheless found the motion was "totally lacking in merit," based on the following rationale:

> However, the evidence comes from a man [Hurlbut] with a history of providing false information about high profile cases, a man who has been convicted on numerous occasions of offenses involving the making of false statements. Moreover, the only possible link between [the cousin] and the victim is based on an affidavit that cannot be correct because the truck it talks about was sold two years earlier. Accordingly, [d]efendant's evidence that [the cousin] was the killer is so patently and inherently incredible that no jury could ever believe it, to the point that her motion for new trial based on it is frivolous and totally without merit.

The court's rationale is based on a report prepared by the investigator for the Windham County State's Attorney's Office. The report is unsworn and was attached by the deputy state's attorney who prosecuted the case to a memorandum of law opposing the motion for a new trial.

 ██ ¶ 24. We agree with defendant that it was error to rely upon the investigator's report and deny the request for a hearing on that basis. The district court was required to "evaluate the quality of the evidence that is alleged to be newly discovered." *State v. Miller*, 151 Vt. 337, 339, 560 A.2d 376, 377 (1989). Even an affidavit from the investigator would be "neither legal nor competent evidence to prove any fact in issue." *Zinn v. Tobin Packing Co.*, 140 Vt. 410, 415, 438 A.2d 1110, 1114 (1981) (discussing ex-parte affidavits); cf. *State v. Olsen*, 165 Vt. 208, 212, 680 A.2d 107, 110 (1996) (affidavit of defense counsel describing

statement to him of a potential witness is not of a "character" to "support a motion for a new trial"). Here, the investigator did not even put his report information in affidavit form. Because the investigator's report was not "evidence" of the kind required to oppose a motion for a new trial, the court erred in relying on that affidavit in denying defendant's motion.

¶ 25. This brings us to the substance of the motion for a new trial. Even if there was error in the court's rationale for denying the motion and even recognizing that we are operating under a deferential standard of review, defendant is not entitled to relief if the motion should have been denied for other reasons. We find that to be the case here.

¶ 26. To warrant a new trial, defendant must establish each of the following with respect to the new evidence: (1) the new evidence would probably change the result on retrial; (2) the evidence was discovered only subsequent to trial; (3) the evidence could not have been discovered earlier through the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching. *State v. Smith*, 145 Vt. 121, 130-31, 485 A.2d 124, 130 (1984). Motions for new trial on the ground of newly discovered evidence are not favored by the courts and are viewed with great caution; courts are properly reluctant to grant a second trial once a defendant has had his or her day in court and been fairly tried. *State v. Sheppard*, 155 Vt. 73, 75, 582 A.2d 116, 117 (1990). In this case, defendant asserted two kinds of newly discovered evidence: the alternative-perpetrator evidence, and the testimony of defendant's daughter that she took a rake that was considered a possible murder weapon.

¶ 27. We begin with the alternative-perpetrator evidence. As we said above, evidence of a possible alternative perpetrator has a special admissibility hurdle. It can be admitted only "as long as motive and opportunity have been shown and . . . there is also some evidence to . . . connect [the] third person to the crime charged." *Grega*, 168 Vt. at 375, 721 A.2d at 454 (citation omitted). In making her ruling on the motion to continue, the trial judge made clear that the evidence presented to her did not satisfy the exacting standards in place for alternative-perpetrator evidence, because there was insufficient evidence to connect the cousin to the murder of Mr. Schreiner. We affirmed that ruling above. With almost no additional evidence, the trial judge ruled in response to

the motion for a new trial that the evidence would probably change the result on retrial. The latter ruling necessarily assumes that the evidence would be admissible, an assumption that is directly contrary to the original ruling. We believe that the trial judge was right the first time.

¶ 28. We think that the evidence connecting the cousin to the crime is too speculative to allow its admission. It consists only of hearsay that the cousin made an unspecific threat against some person in Townshend and that Mr. Schreiner could have been that person because it was possible that he purchased used auto parts from the cousin. There is no direct evidence that Schreiner and the cousin ever met each other and no evidence that the cousin had ever been in Townshend at any time.

¶ 29. Even if the evidence were to be found admissible, defendant cannot meet the first element of the standard: that the new evidence would probably change the result on retrial. See *Miller*, 151 Vt. at 339, 560 A.2d at 377 (stating that the "first element is particularly difficult for the defendant to show because it requires the probability of a different result, not simply a possibility of a different result"). We have talked about the weakness of the evidence above. On this element, however, we look at the newly discovered evidence in relation to the State's case against defendant. *State v. Webster*, 165 Vt. 54, 60, 675 A.2d 1330, 1334 (1996) (different result not probable "[i]n light of the substantial evidence presented by the State"). The State had a strong circumstantial-evidence case against defendant, coupled with admissions that were essentially confessions to the crime. The new evidence in no way undercut that case. We recognize that the trial court found to the contrary, a judgment on which it had discretion. Even applying that deferential standard of review, however, we hold that the evidence the defendant had at the time of the motion for a new trial would probably not have changed the result on retrial.

¶ 30. The reason why the alternative-perpetrator evidence does not meet the high standard for a motion for a new trial involves the inherent weight of that evidence and the weight of the evidence against defendant. It does not involve the credibility of Hurlbut or others. Thus, as the district court ruled, the motion was totally lacking in merit. Accordingly, we affirm the decision not to grant a new trial on the alternative-perpetrator evidence.

54

■ ¶ 31. We next reach the claim that defendant should have been granted a new trial because of the newly discovered evidence about the rake. The evidence involved the statement of defendant's daughter that she took a rake in memory of her father. She said that the rake was damaged when she used it and thereafter discarded. In the motion, defense counsel argued that the daughter's evidence would show that the rake was too fragile to have been used as the murder weapon and that defendant did not dispose of it as the murder weapon. The trial court rejected defendant's contention that this evidence would probably have changed the result: "while the rake may have been a focus of speculation in the popular press, it was only a peripheral issue at the trial." The court also held that the fate of the rake could have been determined earlier had defendant exercised due diligence in searching for it. We reiterate that we address the issue by applying a searching standard of review and that the burden to show a probable change of result is high. *Miller*, 151 Vt. at 339, 560 A.2d at 377. We concur with the trial court that the rake evidence cannot meet this standard. The testimony of the daughter addressed only a collateral issue and did not call into question any element that the State had to prove at trial. See *State v. Jackson*, 126 Vt. 250, 255, 227 A.2d 280, 283 (1967) (to satisfy the rule for a new trial, new evidence must be material to the issue joined, material to the point to be decided by the verdict and not collateral (citation omitted)). The State was not required to locate or identify a murder weapon in order to prove its case. See 13 V.S.A. §§ 2301-2302 (defining elements of first- and second-degree murder); *State v. Doucette*, 143 Vt. 573, 582, 470 A.2d 676, 682 (1983) (setting out elements of murder). We also conclude that the rake evidence, combined with the evidence of an alternative perpetrator, is insufficient to meet the new-trial standard. There was no error in denying the motion for a new trial.

■ ¶ 32. Defendant next argues that the trial court erred in not including a voluntary-manslaughter charge in its instructions to the jury. As a general matter, a criminal defendant is entitled to have the jury instructed on all lesser-included offenses. *State v. Bolio*, 159 Vt. 250, 252, 617 A.2d 885, 886 (1992). "Voluntary manslaughter is an intentional killing committed under extenuating circumstances that would mitigate, but not justify, the killing, such as provocation that would cause a reasonable person to lose self-control." *State v. Delisle*, 162 Vt. 293, 301, 648 A.2d 632,

637-38 (1994) (citation omitted). Both second-degree murder and manslaughter are lesser-included offenses of first-degree murder. *Id.* at 301, 648 A.2d at 637.

¶ 33. Defendant argues that she objected to the trial court's omission of a voluntary-manslaughter instruction and that we should review the trial court's decision accordingly. In the alternative, defendant contends that, under the facts of this case, the trial court's decision not to include such an instruction was plain error.

¶ 34. As a precondition to assigning error on appeal to a jury instruction, Vermont Rule of Criminal Procedure 30 requires a party to object before the jury retires to consider its verdict "stating distinctly the matter to which [the party] objects and the grounds of his objection." This requirement applies irrespective of whether the party raised an objection at pretrial conference. See *State v. Doleszny*, 2004 VT 9, ¶ 10, 176 Vt. 203, 844 A.2d 773 (stating that litigants must raise objections to jury instructions on the record, or this Court will review for plain error); see also *State v. Tahair*, 172 Vt. 101, 104-05, 772 A.2d 1079, 1082 (2001) (same).

¶ 35. Defendant points to one instance in a pretrial charge conference in which she claims to have made such an objection. Defense counsel stated, "I would suggest that the Court give the jury some guidance as to, since there is a lesser included offense verdict, I'm just, I don't think the Court has said here what the verdicts they could reach are." The words are ambiguous and did not state an objection. More importantly, even if we were convinced that defendant had requested such an instruction, she did not object on the record following the reading of the instructions to the jury without any voluntary-manslaughter instruction. Therefore, we may review defendant's claim only for plain error. *State v. Wiley*, 2007 VT 13, ¶ 8, 181 Vt. 300, 917 A.2d 501.

¶ 36. Plain error exists only in exceptional circumstances where a failure to recognize an error would result in a miscarriage of justice, or where there is a glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights. *State v. Carpenter*, 170 Vt. 371, 374-75, 749 A.2d 1137, 1139-40 (2000) (citation omitted). The "claimed error must both seriously affect substantial rights and have an unfair prejudicial impact on jury deliberations." *State v. Deyo*, 2006 VT

120, ¶ 7, 181 Vt. 89, 915 A.2d 249. We have made clear that we will find plain error "only in rare and extraordinary cases where the error is obvious." *State v. Streich*, 163 Vt. 331, 353, 658 A.2d 38, 53 (1995).

¶ 37. Defendant points to two facts that support her plain-error claim: (1) at trial, a witness testified to defendant's statement that she harmed her husband because she "just snapped," and (2) the manner in which Mr. Schreiner was attacked suggested that the killing was committed in the heat of passion. Emphasizing this evidence, defendant contends that she has plainly established at least one of the mitigating factors supporting manslaughter. See *Delisle*, 162 Vt. at 301, 648 A.2d at 637 (explaining that sudden passion, great provocation, or diminished capacity may support a manslaughter charge).

¶ 38. We cannot agree that the evidence clearly supported a voluntary-manslaughter charge. Cf. *id.* (requiring defendant to show that the evidence supported a manslaughter charge). In order to establish manslaughter, four elements must be shown: (1) adequate provocation; (2) inadequate time to "cool off"; (3) actual provocation; and (4) actual failure to cool off. *State v. Perez*, 2006 VT 53, ¶ 14, 180 Vt. 388, 912 A.2d 944 (citation omitted).

¶ 39. Although the evidence at trial did suggest that defendant's marriage had been an unhappy one, cf. *Delisle*, 162 Vt. at 301-02, 648 A.2d at 638 (finding evidence that defendant was in a deteriorating love affair relevant to propriety of voluntary-manslaughter charge), defendant does not point to any specific provocation. Evidence at trial suggesting that defendant put sleeping pills into her husband's coffee several hours before the attack casts doubt on whether defendant did not have time to cool off or did not actually cool off. Furthermore, defendant does not point to any confrontation between herself and the victim, and she does not argue that her capacity was diminished at the time of the offense. After reviewing this evidence, we are unconvinced that the trial court erred at all in not instructing the jury on voluntary manslaughter, and therefore, defendant's plain-error claim must fail.

¶ 40. Defendant's final contention is that she received ineffective assistance of counsel because of trial counsel's failure to request a manslaughter instruction, counsel's misunderstanding of the nature of lesser-included offenses, and counsel's "repeated"

failures to object to hearsay evidence submitted by the State. This claim cannot be raised, in the first instance, on direct appeal of the conviction in the district court. See *State v. Russo*, 2004 VT 103, ¶ 27, 177 Vt. 394, 864 A.2d 655. Defendant can make this claim to the superior court in a post-conviction review proceeding, and if that is unsuccessful, on appeal of the superior court judgment to this Court. *State v. Lund*, 168 Vt. 102, 105, 718 A.2d 413, 415 (1998).

*Affirmed.*